**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEBORAH COATS-HALL,

        Plaintiff,

                                  Case No. 07-14699

v.

                                  HON. MARIANNE O. BATTANI

UNITED AIRLINES,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**I.**      **INTRODUCTION**

Before the Court is Defendant United Airlines' ("United") motion for summary judgment. (Doc. 18). In her complaint, Plaintiff Deborah Coats-Hall sets forth claims of racial discrimination, a hostile work environment, and retaliation. (Doc. 1). Coats-Hall has not shown that there is a genuine issue of material fact as to all the elements for each of her claims because, even assuming she can satisfy the other elements of her claims, she cannot establish that United discriminated, retaliated, or subjected her to a hostile work environment on account of her race or her protected activity. Accordingly, the Court **GRANTS** United's motion for summary judgment.

**II.     STATEMENT OF FACTS**

Coats-Hall, an African-American, began working for United on October 30, 1978, as a General Reservations Agent. In May 2004, she became the Domestic Group Product Specialist ("Domestic Specialist"). Coats-Hall states that when she was offered the position, she was told that the position entailed two weeks of training. Before Coats-Hall became the Domestic Specialist, Kelly Knapp held the position as a temporary backup.

The Domestic Specialist is a "troubleshooter." Employees bring problems that they cannot resolve to the Domestic Specialist, who researches the problem and resolves it. The Domestic Specialist also gives reports and is involved with product changes. There is only one Domestic Specialist, but there are seven other "Product Specialists."

Patricia Snelling, a supervisor for United, Larry Beers, a union representative, and Knapp testified that there is no formal training for the Domestic Specialist position because it involves on-the-job training. When Coats-Hall began working as the Domestic Specialist, she received initial training from Knapp. This initial training involved working side-by-side with Knapp for two days. Knapp testified that she had received no more than two days of such training for the position.

On September 14, 2004, Coats-Hall received a memo from Ellen Landoski, a supervisor, regarding "Job Performance Formal Counseling. It indicated that Landoski and Snelling, among others, had met with Coats-Hall to discuss several areas they were concerned about, and which she needed to correct immediately. In particular, the areas of concern involved (1) her use of email (not always replying to emails, the need to

respond to previous emails instead of starting new ones, and the use of correct grammar), (2) her use of Microsoft Access, Excel, and Word, (3) the need for her to collaborate with all appropriate employees on matters, and (4) the need for her to keep her schedule updated. The memo concluded by stating that Landoski would monitor Coats-Hall's progress and that a "failure to perform at an acceptable level will result in further counseling sessions and disciplinary action."

On September 21, 2004, Coats-Hall filed a charge of race discrimination with the Michigan Department of Civil Rights ("MDCR") and the U.S. Equal Employment opportunity Commission ("EEOC"). Coats-Hall's charge stated that she had received formal written counseling but that she had not received the training that had been given to the "white" individuals who had held the position before her. She indicated that she was afraid that she was being set up for failure and discharge due to her race.

Coats-Hall took a medical leave from work from September 2004 through March 2005 because she suffered a stress-related "breakdown." On February 18, 2005, Coats-Hall and United entered into a settlement agreement relating to the aforementioned charge of race discrimination. Under the agreement, United would provide Coats-Hall with a detailed position description outlining the expectations of the job and allow her to attend computer training on company time. Coats-Hall agreed not to sue United with respect to her charge of race discrimination.

On September 22, 2005, Coats-Hall received a memo entitled, "Job Performance 'Second Opportunity' Formal Counseling." This memo indicated that she still was not meeting expectations with regard to her use of email and keeping her schedule

updated. The memo stated that she could be subject to more formal counseling or disciplinary action if she continued not to perform at an acceptable level.

Coats-Hall states that, on September 20, 2006, she gave a "disorganized" briefing, during which Joseph Buchko, a supervisor, and Knapp made faces at her. In response, Coats-Hall filed an internal complaint of discrimination and harassment on October 3, 2006. On October 26, 2006, she filed a charge against United with the MDCR and the EEOC, alleging that, because of her race, she had been denied training that she had requested. Coats-Hall also alleged that Renee Buttigieg, a white employee who was the International Group Produce Specialist ("International Specialist"), had been given a month of training.

Buttigieg testified that as the International Specialist, she was responsible for the international group department, the international incentive department, specialty sales, the Olympic groups, and individual travel. She stated that she got two days of training from Diane Dumas when she took her new position. In addition, she received training both on-site and in Dallas, Texas, relating to her work on "the Olympic desk." Beers testified that the international specialist and domestic specialist positions were very similar, related jobs.

Collette Jackson, a human resources representative for United in Detroit, investigated Coats-Hall's internal complaint. One of the people Jackson interviewed was Dumas. Written notes of the interview with Dumas indicate that she said she had given Buttigieg between three and five weeks of training. Buttigieg told Jackson that she had received three days of training.

4

Based on her investigation, Jackson found that Coats-Hall had received comparable training to the other Product Specialists.  But, Jackson was unable to determine whether the harassment and discrimination policy had been violated.  Coats-Hall was informed of the results of the investigation during a December 13, 2006, meeting and through a January 4, 2007 letter.  The letter stated that she could seek review of the findings by making a written request within 14 days.  She did not request review of the findings because she felt that United had already made up its mind and that she would need to go outside of the organization to receive redress.

On June 8, 2007, Jackson was forwarded an email from Coats-Hall to Snelling wherein Coats-Hall complained of a hostile work environment.  Jackson held a meeting between Coats-Hall, Snelling, and Beverly Barfield-Terrell, the regional manager, to investigate the issue.  Jackson determined that there was no violation of the harassment and discrimination policy.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-

Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2).

### IV. ANALYSIS

#### 1. *Discrimination Claim*

Where, as here, the plaintiff does not present direct evidence of discrimination, the claim is analyzed using the *McDonnell Douglas* burden-shifting approach. Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007). Under this approach, the plaintiff must first make a *prima facie* case of discrimination. Id. To make out a *prima facie* case, the plaintiff must show that, "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). If the plaintiff establishes a *prima facie* case, a presumption arises that the defendant discriminated against the plaintiff, and the defendant then bears the burden of putting forth a "legitimate, nondiscriminatory reason" for the adverse treatment. Id. at 706 (citation omitted). If the defendant satisfies this burden, the presumption of discrimination disappears, and the plaintiff must show that the defendant's proffered nondiscriminatory reason was a

pretext for discrimination. Id. at 706-07. Throughout this burden-shifting framework, the Plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that she suffered illegal discrimination. Id. at 707.

Even assuming Coats-Hall can make out the first three elements of her *prima facie* case, she cannot show that she was treated differently than a similarly situated employee who was outside of her protected class. See id. To satisfy this element, the plaintiff must show that she was treated differently than an employee from outside the protected class who was similarly situated to the plaintiff "in all relevant respects." See Ercegovitch v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998).

The evidence indicates that Coats-Hall received two days of side-by-side training when she took the Domestic Specialist position, and that Knapp received no more than two days of side-by-side training when she took the position. Although Coats-Hall asserts that Knapp received other training, there is not evidence that Knapp received such training.

There is evidence indicating that Buttigieg received between three and five weeks of training when she took the position of International Specialist, although Buttigieg herself testified that she only received two or three days of training. Nevertheless, for the purposes of summary judgment, the evidence that Buttigieg received three to five weeks of training is sufficient to create a genuine issue of material fact because the evidence must be construed in favor of Coats-Hall, the nonmoving party. See Hawkins, 517 F.3d at 332.

Coats-Hall has not shown, however, that she is similarly situated to Buttigieg. Coats-Hall, as the Domestic Specialist, is responsible for the domestic retail group,

including Group Special Handling, which is a subgroup that handles high value domestic accounts. Buttigieg, as the International Specialist, is responsible for the international group, which includes domestic and international incentive sales, the Olympic desk, and the specialty sales group. Furthermore, the specialty sales group includes the wholesale, ski, and cruise subgroups. Because the International Specialist is responsible for completely different departments than the Domestic Specialist, Buttigieg and Coats-Hall are not similarly situated in all "relevant aspects." See Ercegovitch v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). Accordingly, Coats-Hall's discrimination claim fails because she cannot make out a *prima facie* case. See Wright, 455 F.3d at 707.

### 2. *Hostile Work Environment*

A plaintiff can establish a violation of Title VII and the ELCRA by showing that she is subject to a hostile work environment. Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001); Chambers v. Trettco, Inc., 463 Mich. 297, 312 (2000). A hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see M.C.L. § 37.2103(i)(iii). To establish a *prima facie* case of a hostile work environment under Title VII, the plaintiff must show (1) that she is a member of a protected class; (2) that she was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment unreasonably interfered with her work performance by

creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. Newman, 266 F.3d at 405.

Just as Coats-Hall was unable to show that the alleged discrimination was motivated by race, she also cannot show that she suffered harassment that was based on race. Accordingly, her claim of a hostile work environment fails because she cannot establish a *prima facie* case. See id.

### 3. Retaliation

Title VII and the ELCRA prohibit employers from retaliating against employees who engage in activities protected by the acts. 42 U.S.C. § 2000e-3(a); M.C.L. § 37.2701(a). To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in protected activity; (2) this activity was known by the defendant; (3) the defendant took an employment action that was adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Russell v. Univ. of Toledo, 537 F.3d 596, 608-09 (6th Cir. 2008); Meyer v. City of Ctr. Line, 242 Mich. App. 560, 568-69 (2000). "The evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action." Wade v. Knoxville Utils. Bd., 259 F.3d 452, 463 (6th Cir. 2001).

Again, even assuming that Coats-Hall can establish the first three elements of her *prima facie* case, her claim fails because she cannot satisfy the causal connection element. She has presented no evidence that United retaliated against her because she filed a discrimination charge or engaged in any other protected activity. In her brief, she asserts,

9

> The "causal connection" element, can be established by several factors; First, the Defendant has continuously provided fabricated explanations about the extent of the training and has refused to recognize that the Plaintiff was subjected to differential treatment.  Secondly, the Plaintiff stated that Mr. Buckho made faces at the Plaintiff.

For the reasons discussed in addressing Coats-Hall's discrimination claim, she has failed to establish that she received "differential treatment."  The fact that United has denied that she received such differential treatment and has offered other explanations does not show causation.  Likewise, even assuming that Buchko made faces at Coats-Hall during the September 2006 meeting, this has no apparent relationship to any protected activity and does not show causation.  Therefore, Coats-Hall's retaliation claim fails because she has not shown that she was subjected to any adverse actions on account of her engagement in protected activity.  See Russell, 537 F.3d at 608-09; Meyer, 242 Mich. App. at 568-69.

### V.   CONCLUSION

Accordingly, Coats-Hall's discrimination, hostile work environment, and retaliation claims fail because she cannot show that the alleged harm was due to her race or that she was treated differently than a similarly situated employee who was outside of her protected class.  As such, **IT IS HEREBY ORDERED** that United's motion for summary judgment is **GRANTED.**  (Doc. 18).

**IT IS SO ORDERED.**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

DATED: February 4, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                              s/Bernadette M. Thebolt
                                              DEPUTY CLERK